# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| | ) | Criminal Action No.: 2:09-692-PMD |
| | ) | |
| v. | ) | |
| | ) | |
| Franklin Joe White, | ) | |
| a/k/a Joe Franklin White, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Franklin Joe White moves the court to suppress from evidence a .22 caliber rifle found during the warrantless search of his residence following his arrest outside of the residence. The court held an evidentiary hearing, during which two officers involved with Defendant's arrest testified for the Government and in which the Defendant's mother testified on her son's behalf. For the following reasons, the court denies Defendant's motion.

## BACKGROUND

At approximately 10:25 p.m. on September 18, 2008, officers of the Georgetown Police Department were dispatched to investigate a report of domestic violence occurring at 1915 Butts Street in Georgetown, South Carolina. The officers were informed that a woman was being held at that location against her will and a gun was involved. More specifically, the officers were informed that the woman's boyfriend was not letting her leave the house and was threatening to shoot her if she tried to leave. When Sergeant Steven Church arrived at the house[1] with three other officers, they established a perimeter around the mobile home and noticed a woman standing on the front porch. According to the testimony at the hearing, the woman appeared

---

[1] Sergeant Church testified that he been dispatched to this residence three or four times prior to this incident for other disturbances.

frightened and as if she had been in a fight.[2] She also held her hands in the air as if to gesture a surrender. Sergeant Church, standing behind his patrol vehicle for cover, tried to get the woman to come to him, but she would not comply with his request. He then commanded her to come to him, but again, she did not respond to his request. Next, Sergeant Church asked her if she could come off the porch, and again, she did not respond. Finally, he asked the woman what was wrong, and she gestured that she was being held at gunpoint by mimicking a gun using her forefinger and thumb. Sergeant Church asked her if a gun was pointed at her at that moment, and she indicated that it was. During this exchange, the woman was rocking back-and-forth and kept looking back into the home through the window and door located on the mobile home's porch. Also during the exchange, the officers could hear someone inside the house yelling out, "there's nothing going on." At this point, Sergeant Church contacted the Georgetown County Sheriff's Department to seek additional help.

While the officers waited for back-up officers to arrive, a man came out from inside the residence and onto the porch, pushing the woman out of the way and asking the officers, "What the f--- are y'all doing here? Nothing is going on here. Y'all need to get the f--- out of here." The officers aimed their weapons at the man, who was later identified as the Defendant. From his vantage point, Detective John Gregory testified that he could see the Defendant did not have a firearm or any other object in his hands, so he immediately approached the Defendant and placed him in handcuffs.[3] Detective Gregory testified that he also informed the Defendant of his *Miranda* rights and frisked his person. The frisk did not uncover a firearm, so Detective Gregory

---

[2] Although it was not discussed during the officers' testimony, the report compiled by Detective Gregory indicates that the victim had a swollen upper lip and a cut to her inner lip allegedly caused by Defendant punching her in the mouth.
[3] At this time, another officer detained the woman on the porch in an effort to secure the scene.

asked Defendant what was going on and was there a gun at the residence, to which he responded, "f— you. Do what you're going to do." After placing the Defendant in a patrol vehicle, Detective Gregory then asked the victim where the gun was, and she informed him it was behind the couch in the living room.

While Detective Gregory dealt with the Defendant, Sergeant Church and Officer Creson approached the door of the mobile home and announced their presence. Sergeant Church asked anyone else in the home to speak up and to come out with their hands up, but no one responded. Sergeant Church repeated the announcement and again received no response. These two officers then entered the residence to see if anyone else was inside because they knew a gun was still unaccounted for. After they discovered no one in the living room and kitchen, Sergeant Church made his way down the hallway of the mobile home, at which time the Defendant's mother, Ms. Hermina White, came out from a bedroom. According to Sergeant Church, he asked Ms. White if she was okay and if anyone else was in the residence. She answered that she was okay and that she was the only person remaining in the home. She also responded that the Defendant and the woman on the porch were arguing, but nothing was going on. He then asked her if a gun was in the house, and she replied that there was not. Sergeant Church testified that he then asked her if he could search the home for the firearm and that she granted him consent to do so. He then returned to the living room of the home, where Detective Gregory was now present. Detective Gregory informed Sergeant Church that the victim had told him the firearm was located behind the couch in the living room, and behind the couch, the officers found the rifle that is the subject of Defendant's motion to suppress. Nothing in the record reveals that the officers searched any other part of the mobile home besides behind the couch.

3

Defendant's mother testified on his behalf, and her testimony portrays quite a different sequence of events. According to her, she was laying down in her bedroom when she noticed lights shining into her window. She got out of bed and proceeded down the hallway of her home into the living room, where she could hear people talking outside. She then went to the front door of her home to find out what was going on, and she testified that she saw police officers standing in her front yard. She claims to have asked the officers what was going on, but that not one of the officers responded to her. She then went back inside and sat down in the living room. At this time, according to Ms. White, the Defendant came into the living room from the bathroom and went outside, and before he could say anything, he was immediately arrested. Then an officer walked into her house with a flashlight, and without informing her of what he was doing, he went behind the couch in her living room, picked up an object, and left. According to Ms. White, she never gave any of the officers consent to search her home because they never asked for it, and if they had, she would have denied it.

## **ANALYSIS**

### I. **Defendant Has Standing to Challenge the Search of the Residence**

In its response in opposition to Defendant's motion to suppress, the Government questioned Defendant's right to contest the search of the residence at which he was arrested because the Government understood the residence to be owned and occupied by Defendant's mother, but did not have any evidence that Defendant also resided with her. At the evidentiary hearing, Defendant's mother testified that Defendant has always lived with her at the 1915 Butts Street residence and was doing so on the day of his arrest. Therefore, Defendant had a reasonable expectation of privacy in the home and has standing to challenge the officers' search of it. *See,*

*e.g.*, *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990); *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007) ("The Supreme Court has long held that the relatives of home owners who regularly reside at the residence are protected by the Fourth Amendment.").

II. **The Officers Lawfully Entered Defendant's Residence and Seized the Firearm**

To have the rifle suppressed, Defendant contends that the officers lacked a warrant issued on probable cause to search the home, and without one, they were not justified in conducting a protective sweep of the house after arresting him outside of his residence. Even if the officers were justified in conducting a protective sweep of the house, Defendant contends that they unconstitutionally exceeded the scope of the protective sweep by searching behind the couch. Warrantless entries into a residence are presumptively unreasonable, and the Government bears the burden of rebutting that presumption. *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984); *United States v. Mowatt*, 513 F.3d 395, 399 (4th Cir. 2008). Despite this broad admonition, a warrantless search is permissible under certain exceptions where the "exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978).

In his brief, Defendant recognizes one exception to the warrant requirement, the protective sweep, which the Supreme Court delineated in *Maryland v. Buie*, 494 U.S. 325 (1990). In that case, Buie and an accomplice were suspected of robbing a pizza parlor, and it was reported that one of the robbers was wearing a red running suit. Police officers obtained an arrest warrant for Buie, and when executing the arrest warrant at his home, the officers found Buie in the basement and arrested him. After his arrest, an officer performed a protective sweep of the basement to see if anyone else was hiding there, and during this search, the officer seized a red

5

running suit, which he found lying in plain view on a stack of clothing. Buie moved to suppress from evidence the red running suit, and the Court of Appeals of Maryland eventually granted Buie's motion, finding that the officers needed to show they had probable cause to believe a serious threat of danger existed to conduct a protective sweep of the home and that they failed to make such a showing in their presentation of the case. The Supreme Court vacated the Maryland Court of Appeals' decision, and in doing so, it established the following parameters for police officers' investigations after an in-home arrest:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Maryland v. Buie*, 494 U.S. 325, 334 (1990). Based on this language, the Government contends that Defendant's motion should be denied because a protective sweep of the Defendant's house was both necessary and reasonable given the aggravated nature of the circumstances facing the officers. Defendant disagrees. Because the protective sweep of the house occurred after he was handcuffed and placed in the backseat of a police vehicle, Defendant contends the officers cannot justify their search of his house on the basis that they were searching for him. Moreover, Defendant contends that there were neither facts nor inferences which could be drawn from any facts which would have led the officers to reasonably believe that the Defendant's house harbored another individual posing a danger to them.

To be sure, *Maryland v. Buie* did not address the issue before this court. In *Buie*, police officers lawfully entered Buie's home pursuant to an arrest warrant and arrested Buie in his

6

home. In this case, the officers did not act pursuant to a warrant; instead, they were dispatched to the scene to investigate a report of domestic violence and ultimately decided to arrest Defendant based on the scene they encountered. Moreover, the arrest occurred outside of Defendant's home. Therefore, the court must first decide whether or not the law precludes officers from conducting a protective sweep of the inside of Defendant's residence after they arrested him just outside the residence.

In two unreported Fourth Circuit cases, the court upheld protective sweeps inside homes where arrests were made outside. *United States v. Hull*, 239 F. App'x 809 (4th Cir. 2007) (affirming denial of motion to suppress where defendant was arrested outside home and officers conducted protective sweep inside); *United States v. Chase*, 1997 U.S. App. LEXIS 29116, 127 F.3d 1100 (4th Cir. 1997) (finding officers' belief of potential danger reasonable, and search of interior of home constitutional, where defendant was arrested outside home and officers heard people moving around inside despite defendant's denial of presence of others). Moreover, a majority of other circuits have held that the need to conduct a protective sweep because of a safety threat, as enunciated in *Buie*, may justify an officer's entry into a residence where an arrest is made outside it. *See, e.g.*, *Wilson v. Morgan*, 477 F.3d 326, 338–39 (6th Cir. 2007) (considering the fact that the arrest took place outside the home rather than inside of it as only one factor in determining whether the officers had reasonable articulable suspicion to believe a protective sweep was necessary by reason of a safety threat); *United States v. Maldonado*, 472 F.3d 388, 394–95 (5th Cir. 2006) (citing cases in which the Fifth Circuit has upheld the protective sweep of residences even though the defendants in those cases were arrested on their front porch and the arresting officers did not know whether other individuals were inside the

residences); *United States v. Kilfoil*, No. 09-271, 2009 U.S. Dist. LEXIS 110290, at *15 (M.D.N.C. November 24, 2009) (citing to a majority of circuits which have decided that the protective sweep exception justifies entry into a residence where an arrest is made outside, even in the absence of a warrant or probable cause).

In *United States v. Lawlor*, the First Circuit addressed a factual situation similar to the one before this court and concluded that "a protective sweep may be conducted following an arrest that takes place just outside the home, if sufficient facts exist that would warrant a reasonably prudent officer to fear that the area in question could harbor an individual posing a threat to those at the scene." 406 F.3d 37, 41 (1st Cir. 2005). In *Lawlor*, a police officer was dispatched to a home in which it was reported that two men were fighting and a gunshot was heard outside of the residence. When the officer arrived at the house, a house he was familiar with because he had arrested a few of the residents of the home before, he witnessed two men standing in the driveway, who appeared to be arguing with each other, and a woman standing at the front door of the home. One of the men in the driveway was holding a two-by-four and appeared ready to strike the other man. The officer drew his weapon and eventually handcuffed both men. The officer then noticed two spent shotgun shells on the ground in front of the doorway of the residence, and because he was concerned there still may have been an assailant with a gun in or around the residence, he asked the men for the location of the gun. Neither man revealed the location of a gun in the house, and after back-up arrived at the scene, the officer entered the house and made his way through the rooms until he found a shotgun on the floor in plain view, which smelled of gunpowder. One of the men moved to suppress from evidence the shotgun found by the officer, but the trial court denied his motion. On appeal, the First Circuit

8

affirmed the trial court's denial. It found that the officer could conduct a protective sweep of the home despite the fact that the officer arrested the men just outside of the home. In reaching this conclusion, the court noted that the Supreme Court's concern in *Buie* was over the risk of danger in the context of an in-home arrest created by unseen third parties in the house, and "that an arrest that occurs just outside the home can pose an equally serious threat to arresting officers as one that occurs in the home." *Id.* Based on these cases, the court concludes that the officers were not precluded from conducting a protective sweep of the residence solely because they arrested the Defendant outside of his residence on the steps of his front porch.

Having determined that the officers were not automatically precluded from conducting a protective sweep of the residence simply because they arrested Defendant on the steps of the front porch, the court must next determine whether or not the officers knew of articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer to believe that the interior of Defendant's home harbored an individual posing a danger to those on the arrest scene. Given the circumstances with which the officers were confronted, the court finds their entry into and cursory inspection of the Defendant's mobile home was reasonable. The circumstances warranted a reasonable fear that an individual with a firearm may still be lurking in the home: it had been reported to the officers that a gun was involved in the domestic disturbance occurring at the residence, the victim indicated she was not complying with Officer Church's commands to come off of the porch because she was being held at gunpoint by someone inside the mobile home, and the gun remained unaccounted for after the officers detained Defendant outside of the residence. Based on these facts, the officers' reasonably believed a firearm was still in the house and that it could have been in possession of

another person. Therefore, their warrantless entry into Defendant's home did not violate his Fourth Amendment rights.

Even if the officers were justified in making a warrantless entry into the home to conduct a protective sweep, Defendant contends that their search behind the couch unconstitutionally exceeded the scope of the cursory search authorized by the Supreme Court in *Buie*. In *Buie*, the Supreme Court emphasized that "a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id.* at 335–36. Therefore, Defendant argues that the officers were only permitted to search in areas where a person who could pose a danger to them might be hiding, which does not include the area behind the couch. But *Buie* did not present a situation like the one faced by the officers in this case, and in cases where officers have faced imminently dangerous situations in which speed is essential to prevent escape or harm to police or others, the court has determined that "the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978); *see also United States v. Moses*, 540 F.3d 263, 270 (4th Cir. 2008) ("Examples of exigent circumstances include a risk of danger to the police or to other persons inside or outside the dwelling.") (internal quotation omitted). The Fourth Circuit has directed district courts to consider the following nonexhaustive list of factors to determine whether exigent circumstances exist in a particular case:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Moses*, 540 F.3d 263, 270 (4th Cir. 2008) (citing *United States v. Turner*, 650 F.2d 526, 528 (4th Cir. 1981)).

After considering these factors and other cases which have addressed emergency situations, the court finds that exigent circumstances existed to justify the officers' search for the firearm behind the couch. First, the officers knew that someone called 911 to report a hostage or kidnapping situation in which a woman was being held by gunpoint against her will. When the officers arrived at the scene, they observed the victim standing on the front porch with her hands in the air, and she appeared frightened and beaten up. She refused to comply with Sergeant Church's commands to come to him, and consistent with the dispatch, she indicated to the officers through her gestures that her reason for disobeying his commands was because she was being held at gunpoint by someone inside the mobile home. When Defendant emerged from the residence, he did not have a firearm in his possession, and the fact that the firearm was still unaccounted for led the officers to believe it was still located inside the house. Inside the house, the officers found one more person, Defendant's mother, who denied any knowledge about a firearm; yet the victim eventually informed Detective Gregory that the firearm could be found behind the couch. Based on these facts, the officers reasonably believed a gun was still present in the home, and the circumstances presented a high degree of urgency on the part of the police officers to locate the firearm and secure the scene in an effort to eliminate any danger to them and others possibly in the home. *Mora v. City of Gaithersburg*, 519 F.3d 216, 226 (4th Cir. 2008) (finding that police officers have the "authority to defuse a threat in an emergency, [which] necessarily includes the authority to conduct searches aimed at uncovering the threat's scope").

Defendant believes the court should follow its ruling in *United States v. McCants*, 2009 U.S. Dist. LEXIS 101235 (D.S.C. Aug. 5, 2009) and the dissent in *United States v. Lemus*, 2010 U.S. App. LEXIS 3171 (9th Cir. Feb. 18, 2010), which is an opinion denying en banc review. After reviewing both of these authorities, the court finds that the facts of those cases are materially distinguishable from the facts presented to the officers in this case. The officers in those cases arrived to their respective scenes knowing the identity of the person they sought to arrest and were not presented with a hostage situation, which involved an unknown, armed perpetrator located inside the residence. Instead, the court finds controlling guidance from its own circuit in *Mora v. City of Gaithersburg*, 519 F.3d 216 (4th Cir. 2008), where the Fourth Circuit developed a framework for analyzing the constitutionality of preventative action taken by police officers.

In *Mora*, police received a call from a healthcare hotline operator, in which she said that the defendant informed her he was suicidal, had weapons in his apartment, could understand shooting people at work, and said he might was well die at work. The officers also learned that the defendant's girlfriend had recently ended her relationship with him and that a coworker confirmed the seriousness of the defendant's threats. Police rushed to the defendant's apartment and found him in the parking lot loading suitcases and gym bags into a van. The officers handcuffed the defendant and placed him on the ground. Then, without a warrant, the officers searched the defendant's luggage and the van and found one round of handgun ammunition in a suitcase. The officers then took the defendant's keys and searched his apartment. Inside, they found a gun safe in the kitchen and noticed that every interior door was locked. After pressuring the defendant, the officers learned the combination to the gun safe, and inside of it, they found

twelve handguns, eight rifles, one shotgun, and keys to a second safe. After searching the interior rooms, the second safe, and a locked file cabinet, the officers found additional guns, ammunition, gun accessories, and survival literature.

The defendant moved to suppress the evidence found in the suitcases, van, and his apartment because he claimed they were the product of unconstitutional searches. The district court disagreed and denied the defendant's motion. In addressing the officers' search of the defendant's apartment, the district court upheld the search because it believed the exigent circumstances presented to the officers justified the search. The Fourth Circuit affirmed the district court's decision. In doing so, it noted that "[i]n circumstances that suggest a grave threat and true emergency, law enforcement is entitled to take whatever preventive action is needed to defuse it." *Id.* at 225–25. Moreover, in finding the officers' search of the defendant's apartment constitutionally permissible, the court concluded that "[i]n an emergency situation presenting even greater proximity, stress, and uncertainty," officers are entitled to find out what they are up against, and they often cannot find it out without conducting searches." *Id.* at 226.

Applying this precedent to the facts of this case, the court finds exigent circumstances existed to justify the officers' warrantless search behind the couch located in Defendant's house. Again, the officers initially faced a hostage situation, which they reasonably believed involved a gun, and this emergency situation permitted them to locate the firearm in an effort to secure the scene. It is important to the court's ruling that the officers did not conduct a random, general search of the house for the firearm, but searched only in the specific location where the victim told them the firearm could be found—behind the couch. Thus, the officers' search was "strictly circumscribed by the exigencies which justify its initiation." *Mincey v. Arizona*, 437 U.S. 385,

393 (1978). Therefore, the court believes Defendant's motion to suppress should be denied because the officers' actions were justified by the circumstances and dangers presented to them. Furthermore, to adopt Defendant's position would go against the Fourth Circuit's explication of the Fourth Amendment. *See Mora v. City of Gaithersburg, Md.*, 519 F.3d 216, 222, 224–25 (4th Cir. 2008) (noting that, in discussing Supreme Court decisions addressing exceptions to the search warrant requirement, Fourth Amendment analysis is to be approached "with at least some measure of pragmatism" and "[i]f there is a grave public need for the police to take preventive action, the Constitution may impose limits, but it will not bar the way").

### III. <u>Defendant and His Mother Consented to the Search of Their Home</u>

As the court stated at the evidentiary hearing, it does not believe its ruling is controlled by consent; rather, it believes it is dictated by the facts presented to police officers at the scene. Nevertheless, the court also denies Defendant's motion to suppress based on the fact that both the Defendant and his mother consented to the officers' search of the residence. *Illinois. v. Rodriguez*, 497 U.S. 177, 181 (1990); *see also United States v. Tinsley*, No. 98-4379, 1998 U.S. App. LEXIS 26059, at *5 (4th Cir. Oct. 13, 1998) ("A warrantless entry is valid even if based upon the consent of a third party whom police reasonably believe has authority over the premises but who does not."). Detective Gregory testified that after he handcuffed Defendant, he informed him of his *Miranda* rights and asked him what was going on and if there was a gun at the residence, to which the Defendant responded, "f— you. Do what you're going to do." The court finds that Defendant knew the officers wanted to locate the firearm in the home based on Detective Gregory's question, and his response constitutes a form of consent for the officers to search for it.

Also, the court finds that after the police officers lawfully entered the residence to conduct a protective sweep, Ms. White, the owner and a resident of the home, gave Sergeant Church consent to search for the firearm. Although Ms. White testified during the hearing that she did not give the officers consent, the court does not find her testimony as credible as the officers in this case. In making this determination, the court considered her hostile demeanor while testifying, along with the fact that she admitted she knew her son had prior troubles with the same woman involved in this incident back in January of 2008, the same year this incident occurred; yet, she claimed she did not know a gun was involved in that case, when in fact it was. Additionally, the circumstantial evidence of the dispute between the victim and the Defendant, including Detective Gregory's report revealing that the victim had a swollen lip which allegedly resulted from being punched in the face by Defendant, indicates that the dispute escalated in its severity; yet, Ms. White claimed she did not hear any arguing between the Defendant and the victim because she was in her bedroom. But pictures of the mobile home revealed that it was not a large home, and the court finds it hard to believe Ms. White did not hear any arguing between the two. Finally, Ms. White claims she went to the front door of her home, saw the police officers in the front yard, and asked them what was going on, but that none of the officers responded to her. Based on the situation presented to the officers and the testimony of how they reacted, the court does not believe that if Ms. White had gone to the front door and asked what was going on the officers would have let her reenter her house without at least addressing her.

Thus, based on the totality of the circumstances, the court finds Ms. White's testimony lacking in credibility and concludes she did give the officers consent to search her home. Because the officers had voluntary consent from both Defendant and his mother to search the

residence for the firearm, their search behind the couch and seizure of the rifle did not violate Defendant's Fourth Amendment rights.

## **CONCLUSION**

Based on the foregoing, the court finds that the preventive search and seizure of the firearm was objectively reasonable; that the officer's protective sweep of Defendant's house and search behind Defendant's couch were based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted those intrusions; and that the scope of the protective sweep and search behind the couch were strictly tied to and justified by the circumstances which rendered their initiation permissible. The court also finds that the Defendant and his mother gave the officers consent to search their residence for the firearm. Therefore, the court **DENIES** Defendant Franklin Joe White's motion to suppress.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 1, 2010**
**Charleston, SC**